IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN E. GARCIA,

    Plaintiff,

v.                                                                                    16cv495 WPL

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Steven Garcia applied for disability insurance benefits on August 3, 2012 (Administrative Record "AR" 205), and supplemental security income on August 15, 2012 (AR 208), alleging disability beginning on March 1, 2010 (AR 254), from "Severe gout heart problems sleep apnea hearing loss," "severe Gout Elbows Knees Fingers DAILY ATTACKS," "Heart Problems," "Sleep Apnea," "Hearing Loss 50 percent on each ear Ringing noise at time," and "Arthritis Knees both hands fingers lock" [sic] (AR 253). After his application was denied at all administrative levels, he brought this proceeding for judicial review. The case is before me now on his Motion to Reverse and Remand, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Garcia's reply. (Docs. 21, 25, 28.) For the reasons explained below, I deny Garcia's motion and affirm the judgment of the SSA.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three

phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

**FACTUAL BACKGROUND**

Garcia is forty-one years old. (AR 80.) He graduated from high school and previously worked as a security officer, cook, fast food worker, custodian, and parking lot attendant. (AR 38-39, 231, 241-242, 244.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

Between 2007 and 2009, which was before the alleged onset of disability on March 1, 2010, Garcia went to the emergency room ("ER") at least seven times for pain in various joints caused by gout. (AR 311-316, 317-322, 323-330, 331-338, 379-384, 385-391, 461-476.) The

3

treatment was usually non-steroidal anti-inflammatory and narcotic medications. (*See, e.g.*, AR 320.) It appears as though Garcia had no primary care provider ("PCP") from 2007-2009. (*See, e.g.*, AR 461 (medical note from ER visit on May 10, 2007, stating "NO, PCP"); AR 313 (medical note from ER visit on December 4, 2009, stating "Patient has no PCP").)

From the alleged onset of disability on March 1, 2010, to the end of 2010, Garcia went to the emergency room five times and had two appointments with a PCP, Richard Aries, M.D., mostly for pain from gout. (AR 298-304, 305-310, 346, 347, 348, 369-371, 372-374, 375-378, 432-433, 434-435, 436-437.) The progression was as follows: an ER visit on March 7, 2010, for pain in the right elbow from gout (AR 308-310), for which he was given an injection of methylprednisolone (AR 310); an ER visit on September 24, 2010, for pain in the right foot that was "not consistent with gout" (AR 299); an ER visit and imaging on September 25, 2010, for pain in the right foot from gout (AR 375-378, 432-433), for which he was given a prescription for indomethacin and Percocet (AR 376); a visit with Dr. Aries to establish a PCP on September 30, 2010 (AR 347-348), during which Dr. Aries prescribed allopurinol for gout (AR 347); an ER visit and imaging on October 18, 2010, for pain in the right foot from gout (AR 372-374, 434-435), for which he was prescribed indomethacin (AR 373); an ER visit on October 25, 2010, for pain in the left elbow from gout (AR 369-371), for which he was prescribed allopurinol (AR 370); and a follow-up visit with Dr. Aries on December 3, 2010, during which Garcia was not experiencing gout symptoms (AR 346).

In 2011, Garcia went to the ER twice and saw Dr. Aries three times for gout related pain. (AR 344, 345, 361-363, 364-66, 448.) The progression was as follows: a visit with Dr. Aries on February 18, 2011, where Dr. Aries noted that Garcia should use Percocet when his pain is too severe (AR 345); a visit with Dr. Aries on February 21, 2011, during which Dr. Aries increased

4

the dose of allopurinol (AR 448); an ER visit on September 5, 2011, for an "acute gout flare" (AR 365), for which he was prescribed indomethacin and oxycodone (*id.*); a visit with Dr. Aries on November 22, 2011, where Garcia reported that he had not taken his medication for a few months and had not had any gout flares (AR 344); and an ER visit on December 26, 2011, for pain in his left elbow from gout (AR 361-363), for which he was prescribed indomethacin and oxycodone and instructed "about important need for PCP [illegible] [and] refill of meds to decrease recurrence of subsequent gout attacks" (AR 362).

In 2012, Garcia had two ER visits, underwent a polysomnogram, a pulmonary function test, and an audiological test, and had a consultative examination with Kea Ann Parker, M.D. (AR 352-354, 358-360, 392-393, 395-412, 413-421, 422-425, 430-431, 442-445, 451-453.) The progression was as follows: an ER visit on March 12, 2012, for pain in his right knee from gout (AR 358-360), for which he was prescribed indomethacin and oxycodone (AR 359); a nocturnal polysomnogram on May 21, 2012, to evaluate claims of insomnia and sleep apnea (AR 395-399, 413-425), which Frank M. Ralls, M.D., interpreted to "demonstrate[] severe obstructive sleep apnea" (AR 397); a pulmonary diagnostic test on May 25, 2012, for difficulty breathing, which returned a normal result (AR 392-393); an ER visit on June 7, 2012, for hand pain after a fall (AR 352-354, 430-431), for which he was prescribed Motrin and Percocet (AR 353); an audiometric hearing test on October 19, 2012, which contains no narrative analysis (AR 451-453); and a consultative examination with Dr. Parker on October 20, 2012 (AR 442-445), where Dr. Parker noted, among other things, that "[f]or his severe gout, he is not currently on medication and had no signs of joint erythema or tenderness on today's exam, no functional limitations" (AR 444).

These records constitute the relevant evidence the ALJ considered when he entered his decision on November 5, 2014.

Garcia later appealed the ALJ's denial of benefits to the Appeals Council and submitted additional records, which span from September 2012 to June 2014. (AR 6.) The Appeals Council made the evidence part of the record. (*Id.*) The evidence is as follows.

In 2012, Garcia had two ER visits and one urgent care visit for various types of pain. (AR 503-505, 505-507, 515-517, 542.) The progression was as follows: an ER visit on September 19, 2012, for back pain after sleeping "in an awkward position" (AR 506), with a diagnosis of "back pain" and prescription for Percocet (AR 507); an ER visit on October 28, 2012, for back pain after a fall at work (AR 503), for which he was prescribed ibuprofen (AR 504); and a visit to Urgent Care on November 23, 2012, for elbow pain related to a "gouty flare" (AR 515), for which he was prescribed Percocet (AR 516).

In 2013, Garcia had two follow-ups appointments from his polysomnogram, a medical evidence evaluation completed by non-examining state agency consultant Kenneth Glass, M.D., and four ER visits for gout related pain. (AR 102-113, 493-495, 495-497, 498-501, 501-503, 518-521, 521-523, 541.) The progression was as follows: a visit with Dr. Ralls on January 31, 2013, where Dr. Ralls adjusted the settings on the sleep machine and refitted Garcia's mask (AR 521-523); a second visit with Dr. Ralls on April 22, 2013 (AR 518-521), where Dr. Ralls "encouraged" Garcia "to increase exercise as much as possible" and to "place him/her self on a low fat/low carbohydrate/low salt diet" [sic] (AR 521); a medical evidence evaluation by Dr. Glass on May 10, 2013 (AR 102-113), during which Dr. Glass noted that a disability adjudicator spoke to Garcia on the phone two days earlier without difficulty (AR 111) and concluded that Garcia was not disabled and could complete light work (AR 112-113); an ER visit on August 3,

2013, for pain in his left elbow from a gout flare (*see* AR 501-503), for which he received an injection and pain medication (AR 503); an ER visit on October 31, 2013, for left foot and knee pain (AR 498-501, 541), which was diagnosed as cellulitis and a gout flare (AR 500), and for which he was prescribed pain medication and an antibiotic (*id.*); an ER visit on November 18, 2013, for left knee pain from gout (AR 495-497), for which he was prescribed indomethacin and oxycodone (AR 497); and an ER visit on December 8, 2013, for right toe pain from gout (AR 493-495), for which he was prescribed indomethacin (AR 493).

In 2014, Garcia received a physical therapy referral, attended some physical therapy sessions, and had an ER visit. (AR 491-492, 535-536, 537-538, 540.) The progression was as follows: a physical therapy referral from a clinic on August 11, 2014, for treatment of back pain and difficulty walking (AR 535-536); three physical therapy appointments that concluded with an early discharge on March 17, 2014, "based upon noncompliance with department attendance policies" (AR 538); and an ER visit on June 23, 2014, for left hand pain (AR 491-492, 540), which was diagnosed as having "no clear etiology . . . but gout likely" (AR 492).

## ALJ AND APPEALS COUNCIL'S DECISION

The ALJ issued his decision on November 5, 2014. (AR 28.) At step one, he determined that Garcia has not engaged in substantial gainful activity since March 1, 2010. (AR 23.) At step two, he found that Garcia "has the following severe impairments: gout, arthritis, bilateral hearing loss, back pain, sleep apnea and obesity." (*Id.*) At step three, the ALJ concluded that Garcia did not have an impairment or combination of impairments that met or medically equaled anything in the Listing of Impairments. (AR 24.)

At phase one of step four, the ALJ determined that Garcia had the RFC "to perform light work" with the following limitations:

the claimant can lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently in light work as defined by the regulations; he can stand or walk for approximately 6 hours per 8 hour workday and sit for approximately 2 hours per 8 hour work day [sic], with normal breaks. The claimant should avoid concentrated exposure to noise and should avoid work where excellent hearing is needed. The claimant should avoid even moderate exposure to hazards.

(AR 24.) In making this determination, the ALJ found Garcia "not entirely credible" (AR 25) and gave "great weight to the opinions of the State agency medical consultants" (AR 27).

At phases two and three of step four, the ALJ concluded that Garcia "is capable of performing past relevant work as a fast food worker and parking lot attendant." (AR 28.)

The ALJ also included an alternative disposition at step five, where he used the Medical Vocational Guidelines ("Grids") to conclude that Garcia was not disabled. (AR 28.) The Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Garcia cites three reasons to support reversing and remanding his case. First, the ALJ's RFC analysis contains legal error and is contrary to substantial evidence because it is contradicted by the later-submitted evidence considered by the Appeals Council; does not account for Garcia's non-exertional limitations of obesity and hearing loss; rests on an improper credibility analysis; and rests on an undeveloped record. (*See* Doc. 21 at 15-23.) Second, the ALJ's past relevant work finding contains legal error and is unsupported by substantial evidence. (*See id.* at 23-26.) And third, the ALJ's step five finding contains legal error because it lacks sufficient analysis. (*See id.* at 26-27.) I discuss each argument individually but find none to be persuasive.

## I. RFC Finding

Garcia first argues that the evidence considered by the Appeals Council reveals an "increase in severity and frequency of Mr. Garcia's gout flares," which renders Dr. Parker's findings "suspect" and deprives the RFC of substantial evidence support. (*Id.* at 17.) Garcia relies on *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012), where the court found error because later submitted evidence from a treating physician rendered an earlier opinion from the agency consulting physician "patently stale." (Doc. 21 at 17.) The Commissioner responds that the additional evidence "do[es] not describe functional limitations beyond those expressed in the RFC," and relies on *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (unpublished), where the court found no error in the ALJ's reliance on an earlier agency consulting physician's opinion because nothing in later submitted opinions "would render [the agency physician's] opinion stale." (Doc. 25 at 7.)

Garcia's circumstance is more like *Tarpley*. The later submitted evidence does not render Dr. Parker's medical opinion stale because there was no "material change" in Garcia's condition. *Tarpley*, 601 F. App'x at 644. First, the frequency of gout-related medical visits did not increase. Compare the following: from March 2010 to October 2012—which was prior to Dr. Parker's opinion on October 20, 2012—Garcia visited the ER and Dr. Aries nine times for gout related pain, while from November 2012 to 2014—after Dr. Parker's opinion—Garcia visited the ER five times. (*Compare* AR 308, 345, 358, 361, 365, 369, 372, 375, 448 *with* AR 491, 493, 495, 498, 501.) Second, the severity of Garcia's gout pain, measured at its most painful, has not changed. For example, during the October 18, 2010, ER visit, Garcia reported ankle pain from gout at a "10/10" pain level, while during the ER visit on December 8, 2013, he reported toe pain

from gout as "severe 10/10." (*Compare* AR 372 *with* AR 493.) Lastly, the later submitted medical evidence does not directly contradict Dr. Parker's findings, so *Chapo* is inapplicable.

Garcia's second argument about legal and substantial evidence errors in the RFC is that the RFC fails to account for two non-exertional impairments: obesity and hearing loss. (*See* Doc. 21 at 17-29.)

Addressing obesity, Garcia argues that the ALJ ignored five pieces of evidence, which violated Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002),[2] which notes that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately" and mandates that the ALJ "not make assumptions about the severity or functional effects of obesity combined with other impairments." (*See* Doc. 21 at 17-20.) As case support, Garcia cites *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (unpublished), where the court found error under SSR 02-1p because the ALJ, in finding an RFC of sedentary work for an obese claimant, "mistakenly believed that [the non-examining state agency physician] had identified obesity as one of [the claimant's] medical conditions," when in fact the physician "simply never mentioned obesity." (Doc. 21 at 18.) The Commissioner responds that the ALJ complied with SSR 02-1p because he relied on Dr. Parker's findings, which addressed obesity. (*See* Doc. 25 at 9.)

Garcia's five pieces of evidence are as follows: his statement in 2010 that he was obese and uncomfortable; a body mass index of forty-seven in May 2012; Dr. Parker's statement that Garcia's obesity "may be a functional limitation due to difficulty operating in small places"; the

---

[2] Courts defer to SSRs "unless they are plainly erroneous or inconsistent with the Social Security Act." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (quotation and alterations omitted).

sleep study showing that Garcia's obesity and sleep apnea cause him fatigue; and that obesity contributes to his gout pain. (*See* Doc. 21 at 18-19.)

Applying SSR 02-1p to this case raises the following question: did the ALJ err by making assumptions about the effects of Garcia's obesity? He did not. He relied on Dr. Parker's report, which specifically identified obesity as a potential disability and largely discounted it. (*See* AR 26 (noting that Dr. Parker discounted obesity as a source of Garcia's arthritis).) As for the relationship between obesity and sleep apnea, Dr. Parker addressed them separately—which the ALJ reasonably interpreted to mean that they did not combine to increase Garcia's symptoms. (*See* AR 444 (noting that Garcia had received "recommended treatments for gout and obesity and sleep studies").) As for Dr. Parker's statement that "for [Garcia's] obesity, this in amongst itself may be a functional limitation due to difficulty operating in small places" (AR 444), Dr. Parker used the term "may," and the ALJ properly relied on the lack of a conflicting medical opinion in the record to diminish this functional limitation. This lack of counter-evidence also distinguishes *DeWitt*, where the treating physician's RFC "essentially disqualified [the claimant] from all sedentary work." 381 F. App'x at 784. There is no similar disqualifying opinion here.

As for the second supposed unaddressed functional limitation—Garcia's hearing loss—Garcia argues that the ALJ's analysis of Dr. Glass's opinion contains legal error because the ALJ took a statement out of context and adopted only one of Dr. Glass's two recommended limitations regarding the effect of hearing loss. (*See* Doc. 21 at 19.)

Garcia's first argument—that the ALJ included Dr. Glass's comment that Garcia "did not use hearing assistance devices and no amplification for phone" when speaking with an agency adjudicator (AR 26 (citing AR 111)) but omitted Dr. Glass's comment that Garcia "stated that he has the majority of his hearing problems with low tones and whispers" (AR 111) (*see* Doc. 21 at

11

19)—seems self-defeating. The RFC accounts for the inability to hear softer sounds because it states that Garcia should "avoid work where excellent hearing is needed" (AR 24)—i.e., jobs where one would need to hear low tones and whispers.

Garcia's second argument is that the ALJ erred by incorporating Dr. Glass's recommendation that Garcia "should avoid work where excellent hearing is needed" into the RFC (AR 24 (quoting AR 110)) but failing to incorporate an accompanying recommendation that Garcia "should also not work around machinery with only auditory alarms due to decreased hearing" (AR 110-111). The ALJ, however, accounted for the second recommendation by stating that Garcia "should avoid even moderate exposure to hazards." (AR 24.) Said another way, machinery equipped with auditory alarms poses hazards to workers—hence the need for an auditory alarm—and the RFC precludes Garcia from working around such equipment.

Garcia's third argument about legal and substantial evidence errors in the RFC is that the ALJ's credibility analysis was improper. (*See* Doc. 21 at 20-22.) Garcia disagrees with nearly all of the ALJ's reasons for diminishing his credibility. (*Id.*)

When assessing a claimant's credibility, the ALJ must "consider the entire case record," SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996),[3] cite "specific reasons for the finding . . . supported by the evidence in the case record," *id.* at *2, and adequately link the substantial evidence to the credibility determination, *see Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (ordering "limited remand" because "the link between the evidence and credibility determination [was] missing"); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (reversing and remanding because the ALJ's credibility determination, which consisted of "boilerplate

---

[3] Although SSR 96-7p was superseded by SSR 16-3p on March 28, 2016, *see* 2016 WL 1237954 (Mar. 24, 2016), both parties cite SSR 96-7p as the applicable standard (*see* Doc. 21 at 22; *see also* Doc. 25 at 10) because it was in effect when the ALJ entered his decision in 2014. SSR 16-3p uses different phrasing but contains the same standard. *See* SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

language" that contained no reference to "the specific evidence that led the ALJ to reject claimant's testimony," "did not comply with the legal standards of SSR 96–7p or *Kepler*").

Here, the ALJ's credibility analysis satisfies both SSR 96-7p and *Kepler* because it is adequately supported. Specifically, in his decision, the ALJ noted: "the lack of more aggressive treatment or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as he alleged" (AR 26); "one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor" (*id.*); that Garcia's "ability to participate in such activities [of daily living] diminishes the credibility of the claimant's allegations of functional limitations" (AR 27); that "driving a motor vehicle by himself[] demonstrates that the claimant has the physical ability to operate a vehicle and that he has the mental capacities required to comply with the applicable traffic regulations, and to remember the directions to and from his desired locations" (*id.*); Garcia's statement at the hearing that "he continued to seek employment after the alleged onset date" (*id.*); that there was "nothing of record to contradict the State agency medical consultants' opinions herein" (*id.*); and that "[t]reatment notes in the record do not sustain the claimant's allegations of disabling conditions" (*id.*). These findings, particularly those about the lack of contradictory medical opinions, provide the necessary link between the evidence and the credibility finding.

Garcia's fourth and final argument about legal and substantial evidence errors in the RFC is that the ALJ failed to adequately develop the record because he did not ask the attorney representing Garcia if the record was complete, which meant the ALJ did not have the most recent treatment records when making his decision. (*See* Doc. 21 at 23.) I find this argument unpersuasive, primarily because Garcia was represented by counsel at the hearing, and "in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring

further development." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). Neither Garcia's briefing nor the hearing transcript indicate that counsel identified any such issues. (*See* Doc. 21 at 23; Doc. 28 at 5-6; AR 53 (conclusion of hearing where Garcia's attorney did not attempt to raise further issues).)

> II. **Past Relevant Work, Capacity to Perform Past Relevant Work, and Ability to Perform Other Work Findings**

Garcia argues that the ALJ's past relevant work finding (step four phase two) and capacity to perform past relevant work finding (step four phase three) contain three errors. First, the finding that Garcia could perform his past relevant work as a fast food worker and parking lot attendant was conclusory. (Doc. 21 at 24.) Second, the RFC contradicts the job requirements for a fast food worker in the Dictionary of Occupational Titles. (*Id.* at 25.) And third, the finding that Garcia could perform work as a parking lot attendant fails to satisfy the substantial gainful activity requirement. (*Id.* at 26.) As for the ALJ's ability to perform other work finding (step five), Garcia argues that it is conclusory and fails to properly account for the three non-exertional impairments noted in the RFC. (*See id.* at 26-27.)

"At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1024. "[F]ailure to make explicit findings on the record . . . [is] legal error under *Winfrey*." *Martinez v. Astrue*, 316 F. App'x 819, 824 (10th Cir. 2009) (unpublished). Yet the error is harmless when the ALJ makes a proper alternative step five finding that there are other jobs the claimant could perform. *See id.* ("Because we conclude . . . that the ALJ's step-five finding was proper . . . the ALJ's *Winfrey* error was harmless."). In *Martinez*, the court explained the relationship between the step four and step five findings this way: "[the claimant's] capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different

sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes." 316 F. App'x at 824.

As for a step five finding, the ALJ can meet his burden "either by (1) the testimony of a [vocational expert], or (2) by reference to the Grids." *Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013) (unpublished) (citing *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998)). "[U]se of the Grids is foreclosed only where the 'nonexertional impairments are significant enough to limit the range of jobs available in a given work category.'" *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)).

Here, the ALJ did not err because his alternative step five finding was proper. Under *Martinez*, any step four errors were rendered harmless. And, under *Polson*, use of the Grids was appropriate because the ALJ noted that the non-exertional limitations did not limit the available jobs in the light work category. (*See* AR 28 ("[20 C.F.R. Part 404, Subpart P, App. 2] Rule 202.20 directs a conclusion of 'not disabled' because the claimant can perform all or substantially all of the exertional demands at the light level of exertion.").)

## CONCLUSION

The ALJ's RFC is supported by substantial evidence and free of legal error. In addition, if the ALJ erred in assessing Garcia's past relevant work, the error was rendered harmless because the alternative step five finding was proper. I therefore deny Garcia's motion to remand and affirm the decision of the Commissioner.

IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge